UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSE DRAGON, | : | Case No. 1:08-cv-389 |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 27-34) (ALJ's decision)).

**I.**

On June 4, 2004, Plaintiff filed an application for SSI alleging a disability onset date of April 1, 2004, due to speech problems, learning difficulties, and asthma. (Tr. 69-70, 85).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of her claims on the state agency level, she requested a hearing *de novo* before an ALJ. A hearing was held April 17, 2006, at which Plaintiff appeared with counsel and testified. (Tr. 58-65). A vocational expert, Micha A. Daoud, was also present and testified. (*Id.*)

On May 23, 2006, the ALJ entered his decision finding Plaintiff was not disabled because she could perform her past work as a dishwasher, both as she performed it and as it was actually performed, and, in the alternative, she could perform a significant number of jobs in the economy. (Tr. 27-34, 207-45). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 4-6).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date of April 1, 2004.

2. The medical evidence establishes that the claimant has "severe" borderline intellectual functioning, mild articulation delay, and anxiety disorder NOS, and a reading disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The testimony of the claimant and her father was credible to the extent that such testimony is consistent with the residual functional capacity assessment set forth below.

4. The claimant has the residual functional capacity to perform only simple, routine tasks, and is able to understand, remember and carry out only short and simple instructions. She cannot interact with the general public more than occasionally. She cannot work at a rapid production-rate pace. She is able to make only simple work-related decisions. Any job should not require the ability to make change, or require reading or writing skills above

the third grade level. The job should not require more than very simple math. The claimant has no exertional limitations. (20 CFR 416.945).

5. The claimant's past relevant work as a dishwasher, both as actually and customarily performed, does not require the performance of work-related activities precluded by the above limitations (20 CFR 4126.965).

6. The claimant's impairments do not prevent her from performing her past relevant work as a dishwasher or a significant number of other jobs such as unskilled medium cleaner (1,026,000 nationally, 7,390 locally) and unskilled light cleaner (411,000 nationally, 2,390 locally).

7. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

(Tr. 33-34).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI. (Tr. 34).

On appeal, Plaintiff argues that: (1) the ALJ erred in using a non-examining physician's opinion over an examining physician's opinion; (2) the ALJ erred in rejecting the I.Q. scores by the examining doctor; (3) the ALJ erred in rejecting the I.Q. scores before the age of 22; (4) the ALJ erred in determining Plaintiff's RFC; and (5) the ALJ erred in finding Plaintiff's father's testimony was not credible. (Doc. 6 at 5-11). Upon careful review, the undersigned finds Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For her first and fourth assignments of error, Plaintiff claims that the ALJ erred in adopting a non-examining physician's opinion over an examining physician's opinion, and, accordingly, erred in determining Plaintiff's residual functional capacity ("RFC").

In determining an RFC:

> "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because non-examining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources."

20 CFR § 404.1527(3).

A clinical psychologist, Dr. Paul Deardorff, evaluated Plaintiff on July 13, 2004. (Tr. 160-66). Dr. Deardorff diagnosed Plaintiff with: anxiety disorder, reading disorder, borderline intellectual functioning, occupational problems, problems interacting with social environment, problems with primary support group, educational problems, and a GAF score of 55.[2] (Tr. 616).

---

[2] The Global Assessment of Functioning ("GAF") is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults. A score of 55 indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning.

Plaintiff was described as a high school graduate with a special education background who had difficulty with reading, spelling, and math. (Tr. 165). Plaintiff held many jobs, but had not worked steadily. (Tr. 165). Her longest period of employment was 11-12 months working at a supermarket. (Tr. 161). With regard to her daily activities, Plaintiff cared for her child, assisted with household chores, spent considerable time with her boyfriend, saw her two friends daily, attended church weekly, listened to the radio, played video games, and shopped. (Tr. 163).

Plaintiff's short term memory,[3] attention and concentration skills, arithmetic, and reasoning skills were all "weak." (Tr. 162). On the Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III"), Plaintiff obtained a verbal I.Q. of 58, a performance I.Q. of 51, and a full scale I.Q. score of 50, indicating functioning in the moderately retarded range of intelligence. (Tr. 163). Dr. Deardorff noted that Plaintiff's tested I.Q. was lower than would be expected on the basis of her clinical presentation. (Tr. 164). Based on testing, Plaintiff's word recognition abilities fell at the third grade level, but her reading comprehension abilities were not as well developed; however, they were sufficient for basic labor positions. (Tr. 164-65).

Dr. Deardorff opined that Plaintiff's mental ability to relate to others, including fellow workers and supervisors, was moderately to severely impaired by her emotional

---

[3] "Plaintiff's general memory index of 45 indicates that her general memory abilities are weak and fall in the moderately retarded range or at well less than the 1st percentile for her age group." (Tr. 164).

difficulties. (Tr. 166). Her mental ability to understand, remember, follow instructions, and complete simple repetitive tasks was also moderately impaired by her emotional difficulties. (Tr. 166). Plaintiff's attention and concentration skills were not strong during the evaluation and might deteriorate over extended time periods, slowing her performance in completing simple repetitive tasks. (Tr. 166). Her mental ability to withstand the stress and pressure associated with day-to-day work activities was moderately impaired by her emotional difficulties. (Tr. 166). Accordingly, Dr. Deardorff found that Plaintiff should be granted disability compensation. (Tr. 166).

On August 4, 2004, Douglas Pawlarczyk, Ph.D., a state agency psychologist, reviewed the record, including Plaintiff's statements, Plaintiff's school records, and the examination by Dr. Deardorff. (Tr. 182). Dr. Pawlarczyk determined that Plaintiff had borderline intelligence and an anxiety disorder. (Tr. 171-72). He opined that she had marked limitations in the ability to understand, remember, and carry out detailed instructions. (Tr. 180). Additionally, Dr. Pawlarczyk found that Plaintiff had only moderate limitations in her ability to maintain attention and concentration for extended periods and to perform within a schedule, to complete a normal workday or workweek without interruptions from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them, and to respond appropriately to changes in the work setting. (Tr. 180-81).

Dr. Pawlarczyk opined that Plaintiff had no significant limitations in understanding, remembering, and carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, working in coordination with others without being distracted by them, making simple work-related decisions, asking simple questions or requesting assistance, and maintaining socially appropriate behavior. (Tr. 180-81). He concluded that Plaintiff could perform simple, repetitive tasks in an environment with limited interactions with others. (Tr. 182).

On September 23, 2004, Alice Chambly, Psy.D., a state agency psychologist, reviewed the record and affirmed Dr. Pawlarczyk's opinion. (Tr. 183).

In his decision, the ALJ placed great weight on the state agency non-examining medical source statement of Dr. Pawlarczyk. (Tr. 31). He adopted Dr. Pawlarczyk's opinion as opposed to that of the examining physician, despite the fact that Dr. Deardorff had the opportunity to examine and observe Plaintiff, while Dr. Pawlarczyk did not.

In the hierarchy of medical opinions, the examining physician's opinions are to be given more weight than the non-examining physicians. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). *See also Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007) ("An examining physician's opinion is entitled to more weight than a non-examining source."). Pursuant to 20 C.F.R. § 404.1527(d)(1), Defendant must give more weight to the opinion of a source who has examined Plaintiff rather than to the opinion of a source who has not examined Plaintiff. 20 CFR § 416.927(d) sets forth how medical opinions

should be weighed:

> "Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion. (1) Examining relationship. *Generally, we give more weight to the opinion of a source that has examined you than to the opinion of a source that has not examined you.*"

(Emphasis added).

Accordingly, because the ALJ failed to accord any significant weight to the opinion of the examining physician in this case, his findings (and RFC), which rely on the findings of a one-time consultative physician, are without substantial support in the record.

**B.**

For her second and third assignments of error, Plaintiff maintains that the ALJ erred in rejecting her two I.Q. scores.

In order to determine the relevance of a Plaintiff's I.Q., the social security administration established listing 12.05:

> "Mental retardation refers to significantly sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 11. The required level of severity of this disorder is met when: A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). Once the ALJ determines the validity of an I.Q. score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that the claimant meets or equals the criteria of a listed impairment. *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984) ("consideration of the fact that [claimant] could return to her past work is not a relevant inquiry once she has met the Listing of Impairments").

The record contains school records from 1992 to 1998. (Tr. 138-59). Plaintiff took the WISC-III[4] on April 9, 1992 and obtained a verbal I.Q. score of 65, a performance I.Q. score of 72, and a full scale I.Q. score of 66.[5] (Tr. 147). A May 2, 1994 Individualized Education Program ("IEP")[6] indicated that Plaintiff had mild articulation delay with regard to communication skills and that she qualified for developmentally handicapped and speech therapy programs for the 1993-1994 and 1994-1995 school

---

[4] The Wechsler Intelligence Scale for Children ("WISC") is an intelligence test for children between the ages of 6 and 16 that generates an I.Q. score.

[5] The relevant I.Q. range is as follows: 40-54 indicates moderate mental retardation; 55-69 indicates mild mental retardation; and 70-84 indicates borderline mental retardation.

[6] The Individuals with Disabilities Education Act ("IDEA") requires public schools to develop an IEP for every student with a disability who is found to meet the federal and state requirements for special education.

years. (Tr. 147). On January 3, 1996, Andrea Crain, a vocational expert at Fairfield City Schools, indicated that Plaintiff had consistently slow work speeds, reading and math appeared to be below grade level, and skills were below where they needed to be for some jobs of interest. (Tr. 144). A May 27, 1998 IEP indicated that Plaintiff would be considered a 1998 graduate after completing course work in American Government over the summer. (Tr. 138-39). However, she was exempted from the ninth grade proficiency test because she did not have the necessary skills to pass the test. (Tr. 139).

In his decision, the ALJ rejected Plaintiff's I.Q. score of 66 from Fairfield City Schools (Tr. 147) because he claimed that I.Q. test results were only current for two years when the I.Q. is above 40. (Doc. 7 at 13). The ALJ's finding is misplaced. The fact that the I.Q. test is not "current" does not change the <u>validity</u> of the score. There is nothing in the record to challenge its validity. In fact, the record supports the score's validity because Plaintiff was placed on an IEP based on the score. (Tr. 147). Caselaw also supports the validity of the score. In *Lowery v. Sullivan*, 979 F.2d 835, 838, the Eleventh Circuit found that the ALJ could not discount childhood test scores to prevent a finding of mental retardation. Even the evaluation of non-examining physician Dr. Pawlarzky validated the I.Q. scores taken at the age of 12 as most likely a true estimate of Plaintiff's intellectual ability. (Tr. 182).

The ALJ also rejected the I.Q. score because the test was only referenced in Plaintiff's school records and not actually contained in the file. However, there is no evidence that the school system improperly referenced Plaintiff's test score, especially

given the fact that she was on an IEP.

Current testing by Dr. Paul Deardorff resulted in an I.Q. score of 50.[7] (Tr. 163). The ALJ rejected Dr. Deardorff's I.Q. score because he believed that it was an underestimate of the Plaintiff's intellectual functioning and was therefore not valid. (Tr. 32). However, that is a misrepresentation of Dr. Deardorff's opinion. Dr. Deardorff stated that "[h]er tested I.Q. is lower than would be expected on the basis of clinical presentation." And later "he [sic] appears to be of borderline intelligence." (Tr. 164). Dr. Deardorff does not state that the score was invalid or an underestimate, he simply states that he would have expected the score to be higher as she presented better than she tested. (Tr. 160-66). There is no medical evidence that Dr. Deardorff's test scores were invalid. (*Id*.)

The fact that Plaintiff's presentation was higher than her actual I.Q. is also consistent with her previous I.Q. test score in 1992. Although the ALJ ignored this test result, it also shows that Plaintiff's performance I.Q. was higher than her verbal I.Q. (Tr. 147). The fact that Plaintiff presents better than she actually is, is not unrealistic and it was inappropriate for the ALJ to assume that the results were invalid. Furthermore, the ALJ cannot speculate as to how much higher he thinks the test scores should be. To jump from an I.Q. score of 50 to over 70 is inconsistent with the record and is clearly not supported by any medical evidence. *Rosafo v. Sec'y of Health & Human Servs.*, 807 F.2d

---

[7] I.Q.'s of 70 and below are characteristic of approximately the lowest 2 percent of the general population.

292 (1st Cir. 1986) (when the ALJ makes a medical determination it must be based upon medical evidence). An ALJ, as a layperson, may not substitute his own opinions for those of the expert doctors. *Brown v. Apfel*, 174 F.3d 59 (2nd Cir. 1999); *Temin v. Charter*, 99 F.3d 972 (10th Cir. 1996).

There is no evidence to contradict the two I.Q. scores. A valid score in 1994 (Tr. 147) and a valid score in 2004 (Tr. 163) are clear evidence of a lifelong disability. Moreover, these test scores, in addition to Plaintiff's significant limitations withstanding stress and pressure, relating to others, and following instructions, render her mentally retarded pursuant to listing 12.05. Accordingly, the ALJ's finding that Plaintiff functioned at a borderline level of 70 to 80 is not supported by the evidence.

## C.

Finally, for her fifth and final assignment of error, Plaintiff maintains that the ALJ erred in finding that Plaintiff's father's testimony was not credible.

The ALJ discounted Mr. Dragon's testimony based on the lack of medical evidence. (Tr. 32). Mr. Dragon testified that Plaintiff was a slow learner, could not read or write well, and had speech problems. (Tr. 233-35). He also noted that Plaintiff was too slow on jobs and could not keep up because she had a hard time comprehending. (*Id*.) Plaintiff's school records and Dr. Deardorff's examination clearly support Mr. Dragon's testimony.

The ALJ must consider the testimony of friends and family members. *Durham v. Comm'r of Soc. Sec.*, No. 1:07cv450, 2008 U.S. Dist. LEXIS 94341, at *17 (S.D. Ohio

July 23, 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).  To disregard such testimony violates 20 C.F.R. § 404.1513(e)(2), which mandates consideration of observations by non-medical sources regarding how an impairment affects a plaintiff's ability to work.

Accordingly, the ALJ erred in failing to consider Mr. Dragon's testimony.

**III.**

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).  Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's credible assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's examining physician, proof of disability is overwhelming.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to disability insurance benefits and supplemental security income beginning on April 1, 2004, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:  June 30, 2009                             s/ Timothy S. Black
                                                 Timothy S. Black
                                                 United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ROSE DRAGON, | : | Case No. 1:08-cv-389 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 10 DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 10 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).